UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| JACOB Z. JACOBSON, | 1:11-CV-01003 |
| Plaintiff, | |
| -vs- | ORDER AND OPINION |
| BNSF RAILWAY COMPANY, a Delaware Corporation, | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Jacob Z. Jacobson filed a complaint with South Dakota's Third Judicial Circuit on December 21, 2010, alleging that BNSF Railway Company's negligence was the proximate cause of injuries to his ankle, hand, hip and back. These injuries are the result of a collision occurring January 6, 2008, at railroad grade crossing No. 393-648N in Grant County, South Dakota, between a vehicle driven by plaintiff and a BNSF railcar coupled to a train parked at the crossing. Plaintiff seeks compensation for (1) incurred and future medical expenses, (2) pain and suffering, and (3) lost wages. On January 19, 2011, defendant filed a notice of removal with this court–citing this court's original diversity jurisdiction under 28 U.S.C. § 1332–and an answer to plaintiff's complaint.

This order and opinion is in response to defendant's motion for summary judgment filed on September 30, 2011 (Doc. # 18). Defendant filed an accompanying memorandum in support of the motion (Doc. # 19) and filed affidavits from the train engineer involved in the incident (Doc. # 20), from an accountant with the S.D. Department of Transportation (Doc. # 21), from a Highway Patrol officer who responded to the incident (Doc. # 22), from a BNSF claims representative who investigated the incident (Doc. # 24), from the S.D. Department of Transportation's Rail-Highway Safety Engineer (Doc. # 25), and from BNSF's Director of Mechanical Engineering (Doc. # 26). Defendant also filed an affidavit containing copies of administrative, legislative and court proceedings in support of its memorandum (Doc. # 23).

1

Plaintiff filed a memorandum in opposition to defendant's motion, which also included plaintiff's affidavit as an exhibit, on October 20, 2011. Defendant filed a reply brief (Doc. # 28).

I. **BACKGROUND**

    A. **Standard of Review**

Fed. R. Civ. P. 56 requires that this court dismiss all claims for which the movant shows there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. The movant must support its motion utilizing evidence that would be admissible at trial in order to meet its initial burden showing the absence of a genuine issue of material fact. See Fed. R. Civ. P. 56(c)(2). If the moving party meets its initial burden, the nonmoving party cannot merely rest upon allegations or denials in its pleadings in order to defeat the motion, Forrest v. Kraft Foods, Inc., 282 F.3d 688, 691 (8th Cir. 2002), but must "substantiate his allegations with enough probative evidence to support a finding in his favor" by citing to particular materials in the record which support the assertion that a fact is genuinely disputed, Roeben v. BG Excelsior Ltd. P'ship, 545 F.3d 639, 642 (8th Cir. 2008). See Fed. R. Civ. P. 56(c).

The court must view the admissible evidence in a light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences drawn from the evidence. Country Life Ins. Co. v. Marks, 592 F.3d 896, 898 (8th Cir. 2010). However, the scope of admissible evidence is quite finite: "Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

    B. **Factual Background**

The facts are mostly undisputed. Plaintiff was driving his pickup truck north on 472nd Avenue in Grant County, South Dakota, at approximately 10:00 pm on January 6, 2008. The BNSF railcar parked across the railroad tracks at road crossing No. 393-648N ("crossing") was a low-profile flatbed railroad car, which, according to the plaintiff, lacked "reflectorized markings

2

or other safety warnings located thereon" and was not illuminated by "hand-held or other safety lighting" to alert drivers such as plaintiff to the parked car's presence in the crossing. Plaintiff describes the evening as "clear but dark, moonless." Plaintiff asserts he traveled at a speed not in excess of forty-five miles per hour and was slowing down as he got closer to the crossing. Plaintiff clearly saw how the lights of the West-Con grain facility–located immediately north of the railroad tracks–illuminated the road past the crossing, which he took as an indication that nothing was blocking the roadway. The reflections of the crossbuck signs were also visible to plaintiff on both sides of the track. Plaintiff says that he did not see the "dark green" flatbed car until it was too late, "slamming" the breaks of his vehicle to no avail. Train personnel arrived "several" minutes after the collision, at which time they notified authorities.

The stopped train occupied the crossing to retrieve five tank cars on the elevator track that branches off the main railroad line associated with the crossing. The locomotive end of the train and the elevator track were located east of the crossing. Train engineer Gary Abel had participated in similar stops at that same crossing for ten years before the collision. At the time of the collision, Abel was driving the decoupled locomotives on to the elevator side track to retrieve the tank cars northeast of the crossing. Conductor Eric Nelson remained behind at a switch approximately half a mile east of the crossing. Brakeman Paul Jarrott was walking west towards the rear end of the train to give directions to the engineer over the radio and walked past the crossing before the accident. Before Abel was able to return with the tank cars to connect them to the train, he saw the headlights of plaintiff's vehicle "disappear" into the side of the train at the crossing.

Plaintiff sustained injuries to his ankle, hand, hip and back, resulting in "great pain of body and mind" and permanent injury. Plaintiff has incurred medical expenses totaling at least eighty-seven thousand dollars ($87,000.00) and he also cites the likelihood of future medical expenses.

II.  **DECISION**

Defendant claims: (1) the Federal Railroad Safety Act ("FRSA") preempts all of the assertions of negligence; and (2) the "occupied crossing rule," a doctrine of South Dakota common law and of a number of other states, bars any negligence claim against a railroad resulting from a collision at a crossing when the train is traveling slowly or stopped. The latter contention, however, is not reached unless the former contention is rejected.

A.  **FRSA Preempts Plaintiff's Negligence Theories**

The well known doctrine of Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), does not apply "to actions to enforce rights of the United States acting under its constitutional powers." United States v. McCabe Co., 261 F.2d 539, 543 (8th Cir. 1959) (citing Clearfield Trust Co. v. United States, 318 U.S. 363, 366 (1943)). The right at issue here, federal preemption of possibly conflicting state law, derives from the Supremacy Clause of the United States Constitution. *See* U.S. CONST. art. VI, cl. 2; M'Culloch v. State of Md., 17 U.S. (4 Wheat.) 316, 317 (1819) ("The states have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control the operations of the constitutional laws enacted by congress to carry into effect the powers vested in the national government."). Nevertheless, preemption must be "the clear and manifest purpose of Congress," Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947), as gleaned from the text and structure of the statute, Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 95 (1983).

In 1970, Congress enacted the FRSA "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101 (2006). The Secretary of Transportation (on railroad safety matters) and Secretary of Homeland Security (on railroad security matters) are given authority to "prescribe regulations and issue orders for every area" of their respective competencies with regard to railroads. Id. § 20103(a). To ensure that "orders *related to* railroad safety and laws, regulations and orders related to railroad safety shall be nationally uniform to the extent practicable," FRSA permits states to enact laws, regulations, and orders on matters related to railroad safety or security unless either of the Secretaries "prescribes a regulation or issues an order covering the subject matter of the State requirement."

4

49 U.S.C. § 20106(1), (2) (emphasis added). We know that "[l]egal duties imposed on railroads by the common law" such as plaintiff's negligence claims, "fall within the scope of these broad phrases" and are preempted so long as the Secretaries of Transportation or Homeland Security prescribed regulations covering the same subject matter as the claims of negligence. CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664 (1993). Other exceptions to FRSA preemption include personal injury, death, or property damage claims alleging a party's failure to comply (1) with a federal standard of care established by federal regulations or (2) with "its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries." 49 U.S.C. § 20106(b)(1). No such allegations as to any exceptions are made here.

Plaintiff claims defendant: (1) failed to sufficiently warn plaintiff of the train's presence at the crossing, (2) caused the railcar to block the crossing, and (3) failed to apply sufficient reflectorized material to the railcar.

In Easterwood and Norfolk Southern Railway Company v. Shanklin, 529 U.S. 344, 357 (2000), the Supreme Court held that state tort claims arising out of the subject matter of proper safety warnings at railroad crossings are preempted by the FRSA so long as those warning devices are installed with the participation of federal funds. It is undisputed that federal funds were used for the crossing's warning devices in Grant County, S.D. In addition, those federal regulations that pertain to the subject matter of "warning devices" reflect many of the plaintiff's claims, including a lack of flagmen (49 C.F.R. §§ 234.105-.107) and the need for safety lights or additional safety warnings at the crossing (23 C.F.R. § 646.214(3)(I)). Thus, plaintiff's claims of a lack of lighting and the negligent failure to provide sufficient signage, warning signals, or automatic gates are preempted by the FRSA.

Plaintiff's theory of negligence resulting from the temporarily blocked crossing is preempted by the FRSA. Matters of train movement, including maximum speeds, are regulated by federal law. Easterwood, 507 U.S. at 674-75 (citing 23 C.F.R. § 213.9(a)).

Rules promulgated by the Secretary of Transportation clearly regulate the reflectorization of railcars. 49 C.F.R. pt. 224. The railcar at issue, BN621421, was built prior to

January 26, 2006, and will be reflectorized according to a timeline provided by 49 C.F.R. § 224.107, tbl. 3. This railcar and other similarly grandfathered railcars need not be reflectorized until November 28, 2015. 49 C.F.R. § 224.107(a). This reflectorization regulation was meant to preempt state laws establishing more stringent duties to reflectorize railcars. 49 C.F.R. § 224.1(b) ("Freight rolling stock owners, however, are under no duty to install, clean or otherwise maintain, or repair reflective material except as specified in this part").

All three of the theories plaintiff relies upon as proof of defendant's negligence fall under the preemption provision of the FRSA.

### B. Plaintiff's Theories Do Not Fall Under the Exceptions to FRSA Preemption

Finding that all theories of plaintiff's common law claims of negligence are preempted by the FRSA, this court must determine whether any of the exceptions to FRSA preemption apply. There are three explicit statutory exceptions to federal subject-matter preemption within the FRSA, including the exception plaintiff cites, namely a state law that is "necessary to eliminate or reduce an essentially local safety or security hazard." 49 U.S.C. § 20106(2)(A). Plaintiff does not argue the constitutionality of the statutory preemption nor does plaintiff cite any other preemption exception.

Plaintiff bases the claim of "essentially local safety or security hazard" on the conduct of Brakeman Jarrott, who plaintiff asserts was "plainly [able to] see that [the crossing] was blocked by a flatbed railcar that was not reflectorized, was dark green in color, . . . and that he had a generally unobstructed view of the surroundings." According to plaintiff, Brakeman Jarrott's action, or lack thereof, constitutes "[t]he *key factor* that makes [the train's disposition] an essentially local safety hazard" (emphasis added). This argument is premised entirely upon the factual assumption that Brakeman Jarrott was aware of, or should have been aware of, the alleged hazard's qualities because he was in a position to observe the crossing before the accident and could have acted to prevent it. I assume, for the purpose of this motion, that Jarrott was able to apprise the conditions with sufficient time to intervene to prevent the incident by remedying the factors alleged to constitute an essentially local safety hazard. The question then becomes

whether the confluence of factors in the incident that defendant may have mitigated had its brakeman provided sufficient lighting or flagging are sufficient to constitute an "essentially local safety hazard."

Plaintiff proffers the definition of "essentially local safety hazard" adopted by the Eighth Circuit in Duluth, Winnipeg and Pacific Railway Company v. City of Orr, that such hazards are "local situations which are not statewide in character and not capable of being adequately encompassed within national uniform standards." 529 F.3d 794, 798 (8th Cir. 2008). As the Eighth Circuit noted in its opinion, this standard is in keeping with the FRSA's legislative history. Id. (citing H.R. REP. NO. 91-1194, at 11 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4104, 4117). Inversely then, "[i]f the local situation is actually statewide in character *or* capable of being adequately encompassed within national uniform standards, it will not be considered an essentially local safety hazard." Id. (emphasis in original).

Understandably, plaintiff is unable to find case law, in South Dakota or elsewhere, that cleanly hews to the facts of this case. Plaintiff argues that the physical qualities of the railcar (low profile, dark green paint, lack of reflectors, and lack of motion) and the environmental factors evident at the crossing during the incident (worn symbols applied to the road indicating the approaching crossing, lack of lighting at the crossing, ambient lighting at a distance to the north of the track, and an otherwise moonless night) constitute, in total, an essentially local safety hazard.

In CSX Transportation, Inc. v. Easterwood, 507 U.S. 658 (1993), Mr. Easterwood was killed when a train owned and operated by CSX collided with his truck at a Georgia crossing. Id. at 658. His widow brought a wrongful death action alleging negligent operation of the train under Georgia law resulted in her husband's death. Id. She claimed that CSX was negligent "for failing to maintain adequate warning devices at the crossing and for operating the train at an excessive speed." Id. While plaintiff Easterwood's claim of defendant's failure to maintain adequate warning devices could survive summary judgment, id. at 673, the court denied plaintiff's excessive speed theory as being covered by federal regulation, and thus preempted by

7

FRSA. Id. at 674-75 (citing 49 C.F.R. § 213.9(a)). It is important to note, however, that a subsequent case made clear that a claim of failure to maintain adequate warning devices based on state law must necessarily fail as preempted by the FRSA where the warning devices were erected using federal funds. Norfolk S. Ry. Co. v. Shanklin, 529 U.S. 344, 357 (2000). Easterwood is problematic for the plaintiff because the Court categorically decided that all claims rooted in the common law of negligence do not come within the essentially local hazard exception to FRSA preemption. Id. at 675. The Court construed the essentially local safety hazard exception narrowly, as to do otherwise would be to "completely deprive the Secretary of the power to pre-empt state common law." See id. at 675; Veit ex rel. Nelson v. Burlington N. Santa Fe Corp., 249 P.3d 607, 614 (Wash. 2011).

The text of the FRSA preemption statute provides that a state may adopt "an additional or more stringent law . . . when the law . . . is *necessary* to eliminate or reduce an essentially local safety or security hazard." 49 U.S.C. § 20106(a)(2)(A) (emphasis added). "The common law of negligence provides a general rule to address all hazards caused by lack of due care, not just those owing to unique local conditions." Easterwood, 507 U.S. at 675. In other words, "[w]here a state law has general, state-wide applicability, it is not considered to eliminate or reduce an essentially local safety hazard." CSX Transp., Inc. v. City of Plymouth, 92 F. Supp. 2d 643, 657 (E.D. Mich. 2000) (citing Norfolk & W. Ry. Co. v. Pub. Util. Comm'n, 926 F.2d 567, 571-72 (6th Cir. 1991)). Thus, unless the plaintiff is able to cite a particular state or local statute, regulation, or order that is meant to address a uniquely local hazard by establishing a particularized standard of care, the essentially local hazard exception is of no assistance to him.

Even in the absence of this categorical prohibition on the use of the essentially "local hazard" exception, plaintiff's case fails to carry legal muster. Each of the facts plaintiff cites as constituting jointly or severally an essentially local safety hazard–the placement of a darkly-painted, unreflectorized flatcar at a crossing; the dark, moonless night; the lack of warning lights, flagmen, or other sufficient warning signage at the crossing; the presence of ambient lights and reflections from surrounding facilities and signage–could each, or in any combination, occur at

any number of crossings throughout the state of South Dakota or in any rural area in the United States. The local situation is, thus, actually statewide in character. Duluth, Winnipeg and Pac. Ry. Co. v. City of Orr, 529 F.3d 794, 798 (8th Cir. 2008). Common sense and case law indicate nothing less.

### C. Conclusion

The FRSA preempts plaintiff's state common law negligence claims and none of the exceptions to FRSA preemption apply. As a result, this court need not reach the question of whether the "occupied crossing rule" bars plaintiff's claim. Defendant's motion for summary judgment should be granted. There is no genuine issue of any material fact to prevent the grant of summary judgment.

The court has sympathy for plaintiff's injuries and for the situation with which plaintiff was presented. The court nevertheless has the obligation to rule in favor of the defendant, as required by law.

### III. ORDER

Based upon the foregoing,

IT IS ORDERED that defendant's motion, Doc. # 18, for summary judgment is granted.

No costs are to be taxed.

Dated this 6th day of December, 2011.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: _____
DEPUTY
(SEAL)